## THE MANCHESTER BRIGADE. THE DAVIDSON COUNTY. MANCHESTER LINERS, Limited, v. UNITED STATES.

(District Court, E. D. Virginia.   October 20, 1921.)

1. **Salvage ☞7, 27—Service rendered to disabled vessel held salvage service.**

    Libelant's steamship Manchester Brigade while on a transatlantic voyage and during a severe storm, in response to a wireless call went to the assistance of the steamship Davidson County, which was wholly disabled. She was requested to stand by and tow the Davidson County to the Azores when the weather permitted.  After waiting two days, during which attempts at towing were defeated by the storm and when the weather had moderated and she was about to start towing, she was dismissed by the Davidson County on instructions from her owner, which had sent another vessel to her relief.  The Manchester Brigade was delayed in her voyage two days, and if she had completed the towage she would have been delayed eight days.  *Held*, that her service was one of salvage, and that she should receive one-fourth the salvage award to which she would have been entitled if she had completed the service, in addition to payment for the time lost and the expense incurred.

2. **Salvage ☞15—Dismissal before completion of service does not defeat right to salvage award.**

    Where the services of a salvor vessel have been accepted and she is able and willing to do everything that is necessary to complete the salvage, but is dismissed or superseded for reasons of convenience or economy on the part of the vessel in distress, the services rendered are salvage services and should be rewarded to the same extent and in the same degree as though the service were completed, having regard to the risks actually encountered and to the time and expense incurred.

3. **Salvage ☞26—Lessening of danger of loss of ship by reason of wireless should be considered in awarding salvage.**

    The use of the wireless makes it improbable that, under ordinary conditions of distress or damage to ship machinery, help may not be had before serious danger is encountered, and this fact should be taken into consideration in fixing salvage awards.

In Admiralty.  Suit for salvage by the Manchester Liners, Limited, owner of steamship Manchester Brigade, against the United States, owner of steamship Davidson County.  Decree for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, and Baird, White & Lanning, of Norfolk, Va., for libelant.

J. Frank Staley, Sp. Asst. Atty. Gen., and H. H. Rumble, Admiralty Counsel, and Paul W. Kear, U. S. Atty., both of Norfolk, Va., for respondent.

GRONER, District Judge.  This is a libel for salvage.

[1] The Manchester Brigade, a British steamer, then valued at slightly over a million dollars, left Halifax for Liverpool December 8, 1919. at 11:30 a. m.   About midnight of the same date she picked up a wireless message from the steamer Davidson County, then valued at a little over $600,000, stating that the latter was in distress, giving her position, and that she was drifting north.  Between the last-mentioned date and December 12th a severe storm prevailed, and little, if any, progress was possible in going to the rescue of the drifting

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vessel; but on December 12th the Manchester Brigade received another message from the Davidson County advising of her great danger, and requesting that some one should stand by her during the storm in case the necessity arose for abandoning ship. At a later hour of the same day the Davidson County advised the Manchester Brigade of her position, and the Manchester Brigade changed her course so as to bring her to the given position. Sharp lookout was kept, and both steamers from time to time displayed lights and employed other means to indicate their positions, and about 1:30 p. m. of December 14th the Davidson County was sighted about eight miles away. At 2:30 p. m. the same day the Manchester Brigade came up close, but the wind and sea were too heavy to make salvage operations possible. The wind was blowing a strong gale, and both steamers constantly shipped heavy seas over decks. The Davidson County, with all her propeller blades gone, was then drifting with the wind at an average speed of four or five miles an hour. The two steamers continued in constant wireless communication, the Davidson County repeatedly asking the Manchester Brigade to stand by and to prepare at the first opportunity to tow her to the Azores. At 8:35 p. m. on December 14th the Manchester Brigade advised the Davidson County that she had a towing line 90 fathoms long, of 5½-inch wire cable, which she would endeavor to put aboard, and at daylight of the 15th she maneuvered close up to the Davidson County, and at about 8 o'clock of that morning succeeded in getting a towline aboard. A few minutes later, however, owing to the heavy sea which was still running and the danger of parting the cable, it was slipped to avoid this result. Throughout the day numerous other attempts were made to take the Davidson County in tow, but without success. After daybreak of December 16th several more attempts were made, but these likewise failed owing to the heavy weather. Around noon of the 16th, when the wind and sea had moderated considerably, the Manchester Brigade again maneuvered to make fast to the Davidson County, and when she had prepared and was about to put aboard another line she received a wireless from the Davidson County informing her that the steamer West Lashaway was in close proximity and had been directed by the Shipping Board to take the distressed vessel in tow. The wireless from the master of the Davidson County concluded:

"I regret the time you have lost, and hope the Shipping Board will reward you as your heroic endeavors warrant. All members of my crew unite with me in thanks to you and wishing you bon voyage."

To this wireless the Manchester Brigade replied, offering to stand by until the West Lashaway arrived, but at about 2:30 p. m. that day received a report from the Davidson County saying that the Lashaway was within 40 miles, and that it was unnecessary for the Manchester Brigade to delay her voyage longer. Thereupon the Manchester Brigade proceeded upon her voyage. The Davidson County was picked up by the West Lashaway the following day and towed to the Azores, where she arrived December 20th; the towage service requiring exactly three days. The Manchester Brigade arrived at Liverpool, her des-

tination, at 11 a. m. December 21st, 13 days after her departure from Halifax. The average time consumed between Halifax and Liverpool by the Manchester Brigade was about 11 days, so that allowing for an average voyage it will be seen the lost time by reason of her efforts to salve the Davidson County was two days; and the time that she actually was standing by the Davidson County was also two days. For although she had left her course two days prior to the time she came within sight of the Davidson County, the time lost in finding the ship was made up by the drifting movement of the two ships in the direction of Liverpool. So that, allowing for the additional day required by the Lashaway in getting a line aboard the Davidson County and in actually starting the towing operation, it is fair to assume that had the Manchester Brigade been permitted to carry out her original purpose, the time consumed in the salvage operation would have been six days; and the additional lost time to the Manchester Brigade in steaming from the Azores to Liverpool, allowing one day for communication with her owners, and instructions, would have been, perhaps, two days; which would have made the actual time lost had the whole rescue been accomplished by her about eight days. As against this, her actual delay in her voyage was, as shown above, approximately two days.

It is insisted on behalf of the Davidson County that since the services performed by the Manchester Brigade accomplished nothing that contributed, physically speaking, to the ultimate safety of the vessel, no salvage, as such, is allowable under the doctrine prevailing in the American courts. It is not asserted that the Manchester Brigade should go wholly unpaid for her services, but that the amount allowed should be based upon a quantum meruit, rather than upon a reward for salvage services. Counsel, therefore, protest against an allowance of salvage measured by the total award which would have been made had the Manchester Brigade succeeded in passing a line and successfully towing the Davidson County into the Azores. It is true it has been held by some of the American courts that an indispensable element of salvage compensation is that the service shall be to some degree beneficial; that the effort of the salvor must at least have contributed to the rescue; but in no case called to my attention has there been a refusal to award salvage as such in a case in which the salvage service has been requested by the distressed vessel, and the failure on the part of the salvor to render the substantial service contemplated by the rule is due to the act of the former in discharging the latter just at the moment when success would otherwise attend the efforts being made.

In the case at bar, the services of the Manchester Brigade had been solicited, first, by a general call for help, and, later, by the frequent interchange of radiograms between herself and the Davidson County, in which the one asked and the other agreed to do the needful. The latter vessel represented herself as being in a helpless condition, with some prospect of having to abandon ship. The Manchester Brigade, responding to this appeal, changed her course, and through the greater part of two days and two nights sought to locate the helpless vessel, and when finally this was accomplished stood by her making

effort after effort to render services, and doing everything that seamanship could do under the circumstances. The condition of the weather made it impossible at the moment to accomplish the object of her endeavors, but two days later, when the weather had moderated and it was possible to get a line aboard and begin the towage service, she was dismissed without fault on her part in favor of another vessel which had been instructed to do the work. There is, of course, no ground for criticism of the Shipping Board for preferring one of its own vessels for the salvage service rather than the vessel of a stranger, and there was actually, of course, no option on the part of the master of the Davidson County in the action he took in superseding the original salvor; but to say that because of this combination of circumstances, operating at the moment when the Manchester Brigade would otherwise have succeeded in performing the service which for two days or more she had been making vain efforts to perform, the latter vessel is entitled to no salvage, would be going further than either fairness or good conscience requires. If, instead of the facts as they exist here, the Manchester Brigade, after the first day's futile efforts, had abandoned the Davidson County, I think it might, and could with propriety, be urged that she would be entitled to no salvage; and this principle might properly be extended even to a condition where if she had actually begun the towage service, and for reasons of her own, not amounting to an emergency, had discontinued and abandoned the work.

[2] But where the services of the salvor vessel have been accepted, and she is able and willing to do everything that is necessary to complete the salvage, but is dismissed or superseded for reasons of convenience or economy on the part of the vessel in distress, the services rendered are salvage services and should be rewarded to the same extent and in the same degree as though the service were completed, having regard, of course, as in all salvage cases, to the risks actually encountered in the service and to the time and expenses incurred. That this rule should obtain is in the interest, not alone of commerce, but to encourage assistance to life and property when either are in danger, and requires no citation of authority to sustain it; for otherwise, having regard to the frailties of human nature, there would be little inducement to the masters of vessels to engage in such undertakings and to imperil their own vessels and endanger their own lives if the reward were contingent, not only upon success, but also upon the whim of the owner or master of the vessel in distress.

Applying these principles to the instant case, my opinion is that the amount to be allowed as salvage to the Manchester Brigade should be one-fourth of the amount which she would have received had she completed the entire service, and this is based upon the time consumed as against the time which she would have consumed except for the severance of relations occurring as above stated, and to this amount should be added the expenses and damages sustained by her in the efforts she made.

[3] In fixing the total amount of salvage for services of this character, regard should be had, of course, to the established rules; but in

applying these rules the older salvage cases afford but little help. The amounts allowed were fixed at a time when conditions of rescue of distressed vessels at sea were materially different than at present; for instance, before the use of wireless telegraphy. Consideration was, of course, given to the fact that at such a time the service was frequently rendered on occasions when otherwise the vessel probably would have been lost, for in the then trackless paths of the ocean it was not infrequent for vessels of large size to disappear without trace or sign of their going. When distress overtook them, it was a matter of chance whether another vessel would pass their way and render the necessary service. They might in such circumstances drift entirely out of the steamer paths of the ocean with the attendant risk of damage or total destruction. But all of this is changed under conditions as they exist to-day. In 1901-02 radio communication was in its infancy, and for several years thereafter 50 miles was the distance limit of communication between vessels, but to-day radio communication has been perfected to such an extent that it is possible with the most improved methods to communicate nearly 4,000 miles, and even with the equipment carried by merchant vessels to cover an area reaching several hundred miles in every direction. There is scarcely a part of the broad ocean now to which one vessel may not call another at any moment and secure assistance between suns. The use of the wireless makes it improbable, indeed almost impossible, that under ordinary conditions of distress or damage to ship machinery help may not be had before serious danger is encountered. These facts should be taken into consideration in fixing salvage awards, and instead of the amount being based upon the theory of prize money or bonus, it should be more nearly based upon the principle of compensatory service, plus, of course, a reasonable reward to insure willing service.

The charter value of the Manchester Brigade was approximately $1,750 a day. Damages sustained by her, plus the value of the amount of coal consumed, may be reasonably estimated at $1,500. Her actual out-of-pocket loss, therefore, on account of her efforts to be of service to the Davidson County, was $5,000. Had the service been completed, my judgment of the amount of salvage, in addition to the allowance to the vessel for the time lost and expenses, would have been $16,000. One-fourth of this would be $4,000, and this amount, added to the $5,000 computed and stated above, would make $9,000, which is the amount for which a decree may be entered in favor of the Manchester Brigade.